[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 30, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-14229

_____

D.C. Docket No. 02-00668 CV-ORL-31-DAB

PATRICIA SHINN o/b/o
YVONNE SHINN,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 30, 2004)

Before EDMONDSON, Chief Judge, TJOFLAT and COX, Circuit Judges.

TJOFLAT, Circuit Judge:

The petitioner filed for Supplemental Security Income (SSI) benefits for her

four-year-old daughter Yvonne, claiming Yvonne was disabled. Yvonne suffers

from sickle cell disease, as a result of which she occasionally suffers vaso-occlusive crises, which are

> painful episode[s] in the life of a person affected with sickle cell anemia. [They] occur[] when the sickle cells (red blood cells) form masses that obstruct the flow of blood to various parts of the body. The limbs and joints are the most commonly affected parts, but the central nervous system, the lungs, and the abdomen may also be involved.

6 J.E. Schmidt, Attorney's Dictionary of Medicine and Word Finder V-40 (2002). An Administrative Law Judge (ALJ) with the Social Security Administration (SSA) rejected Yvonne's application. In re Shinn ex rel. Shinn (S.S.A. Feb. 15, 2001) [Shinn I]. A federal district court, acting pursuant to a magistrate judge's recommendation, affirmed the ALJ's ruling. We vacate the district court's ruling and direct the court to remand this case to the Commissioner for further proceedings consistent with this opinion.

Part I explains the rather byzantine law governing determinations of disability in young children. Part II sets forth the procedural history of this case and the proper standard of review. Part III explains our rationale for vacating.

I.

Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits. See 42 U.S.C. §

2

1382c(a)(3)(C)(i) (setting forth the definition of "disabled" for children under 18); 20 C.F.R. § 416.906 (same). The process begins with the ALJ determining whether the child is "doing substantial gainful activity," in which case she is considered "not disabled" and is ineligible for benefits. 20 C.F.R. §§ 416.924(a), (b).

The next step is for the ALJ to consider the child's "physical or mental impairment(s)" to determine if she has "an impairment or combination of impairments that is severe." Id. §§ 416.924(a), (c). A disability counts as an impairment only if it arsies from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." Id. § 416.908. Consequently, the determination as to whether someone has an impairment at all is primarily based on medical evidence. Id. § 416.913(a) ("[The ALJ] need[s] evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."). In contrast, non-medical evidence, including the testimony of "[e]ducational personnel" and "parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy," may be used to demonstrate that a child's impairment is severe. Id. §§ 416.913(d)(2), (4), 416.924a(a)(2).

For an applicant with a severe impairment, the ALJ next assesses whether

3

the impairment "causes marked and severe functional limitations" for the child. 20 C.F.R. §§ 416.911(b), 416.924(d).  Limitations arising from pain count in this determination.  Id. § 416.924(a) ("[The ALJ] will also evaluate any limitations in your functioning that result from your symptoms, including pain.") (parenthetical omitted); see also id. § 416.924a(b)(2) ("[Y]our symptoms (such as pain . . .) may limit your functioning.").

This determination is made according to objective criteria set forth in the Code of Federal Regulations ("C.F.R.").  The C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories.  See id. § 416.925(a).  For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose.  Limitations appearing in these listings are considered "marked and severe."  Id. ("The Listing of Impairments describes . . . impairments . . . for a child that cause[] marked and severe functional limitations.").

A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[], medically equal[], or functionally equal[] the [L]istings."  Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a).  A child's limitations "meet" the limitations in the Listings if the child

actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are "functionally equivalent" to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

> (i) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for [one]self; and
> (vi) Health and physical well-being.

Id. § 416.926a(b)(1). The C.F.R. contains various "benchmarks" that children should have achieved by certain ages in each of these life domains. See id. §§ 416.926a(g)-(l). A child's impairment is "of listing-level severity," and so "functionally equals the listings," if as a result of the limitations stemming from that impairment the child has "'marked' limitations in two of the domains [above],

5

or an 'extreme' limitation in one domain." Id. § 416.926a(d); see also id. § 416.925(a).

Assuming that the limitations stemming from a child's severe impairment meet, medically equal, or functionally equal the limitations specified in the Listings, the ALJ concludes by ensuring that the impairment "meets the duration requirement" specified in the federal regulations. Id. § 416.924(a). This "duration requirement" is that the impairment must "be expected to cause death or . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; see also id. § 416.909.

Having explained the applicable regulatory regime, we will now delve into the procedural history of this case in greater depth.

II.

Yvonne's application for SSI was initially rejected by the SSA, which declined to reconsider its decision. She then requested and received a hearing from an ALJ, who issued a written opinion rejecting her application. The ALJ found that Yvonne had not been, and was not then, engaged in substantial gainful activity. Shinn I, at 2 ("The claimant, age 4, obviously, has never worked . . . ."). He also found that she "has a severe impairment" based on her "sickle cell disease, which causes more than minimal functional limitations." Id. at 4. The ALJ ruled,

6

however, that the limitations on Yvonne's activities arising from this impairment did not "meet[] or medically equal . . . [or] functionally equal" any of the limitations specified in the Listings for sickle cell disease. Id., at 8.

Section 107.05 of the Listings specifies the limitations that an individual with sickle cell disease may have which count as "marked and severe." These include:

A. Recent, recurrent, severe vaso-occlusive crises (musculoskeletal, vertebral, abdominal); or
B. A major visceral complication in the 12 months prior to application [for SSI benefits]; or
C. A hyperhemolytic or aplastic crisis within 12 months prior to application; or
D. Chronic, severe anemia with persistence of hematocrit of 26 percent or less; or
E. Congestive heart failure, cerebro-vascular damage, or emotional disorder as described under the criteria in [other sections of the C.F.R.].

Listing § 107.05.

Yvonne presented two types of evidence to demonstrate that she suffered from the limitation described in Listing § 107.05(A), "[r]ecent, recurrent, severe vaso-occlusive crises." First, she offered the testimony of her mother as to the pain Yvonne felt and the apparent crises she suffered. Second, she put forth medical evidence, including her history of hospitalization and statements of her physician.

Without offering any explanation, the ALJ failed to consider any of the testimony offered by Yvonne's mother in deciding whether Yvonne suffered from such crises, and instead focused exclusively on Yvonne's medical evidence. He wrote,

> Dr. Wall [Yvonne's physician], in her statement of January 4, 2001, noted that there was a reasonable degree of medical certainty that the child could have one of these [limitations specified in § 107.05A] happen. However, this statement has little bearing on this decision as we cannot make a finding of disability based on what "could" happen, only what has happened.

Shinn I, at 4. Consequently, the ALJ found that Yvonne failed to introduce sufficient evidence to prove that she suffered from either recent, recurrent, and severe vaso-occlusive crises, or any other limitation specified in the Listings for sickle cell disease. Id. He therefore concluded that the limitations stemming from Yvonne's sickle cell disease did not meet, and were not the medical equivalent of, any limitations specified in the Listings. Id.

The ALJ then turned to whether her limitations were the functional equivalent of those specified in the Listings by assessing whether she had marked or severe limitations in one or more major life domains. For three of these domains—acquiring and using information, interacting and relating with others, and caring for [one]self—the ALJ found that "[t]here is no evidence or allegation

8

that the child has any limitation of function." Id. at 5-6. The ALJ found that Yvonne sometimes suffers briefly from limitations in two other domains—attending and completing tasks, and moving about and manipulating objects—during her crises, but because these episodes are short and somewhat infrequent, these inconveniences did not rise to the level of being "marked" or "severe" limitations. Id.

Regarding the final life domain, health and physical well-being, the ALJ made the following assessments:

> The evidence establishes that the claimant has a chronic condition with episodic crises. Between February 1997 and September 1998, she was hospitalized on four occasions for such a crisis. These hospitalizations lasted only a few days, after which she was described as doing well. During that time period, she went as long as a year between severe crises and has had none requiring hospitalization since 1998. Her parents testified that she has had other crises, less severe, that did not require hospitalizations. This is certainly credible, but fails to demonstrate more than a moderate limitation of function in this domain. Her crises have been characterized by complaints of pain in the abdomen primarily and sometimes associated with a fever. She quickly responds to treatment. Her mother also testified that the last severe crisis was in 1998 and that she has gradually gotten better. Certainly she will require close ongoing medical treatment, but this treatment does not impose limitations on her ability to function.

Shinn I, at 7-8. Because Yvonne did not have "marked" limitations in any of the major life domains, her limitations were not functionally equivalent to those

9

specified in the Listings, and so she was not disabled or entitled to SSI benefits. The final requirement for receiving benefits, duration of impairment, is not an issue in this case because Yvonne has suffered from sickle cell disease her entire life.

Yvonne appealed to the SSA's Appeals Council the issue of whether the limitations on her activities arising from her severe impairment (sickle cell disease) meet, are medically equivalent to, or are functionally equivalent to the limitations specified in the Listings for sickle cell disease. The SSA's Appeals Council affirmed the ALJ's ruling without a separate written opinion; consequently, the ALJ's ruling must be considered the final decision of the Commissioner of the SSA. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

Yvonne then appealed her denial of SSI benefits to the United States District Court for the Middle District of Florida. A magistrate judge issued a report recommending that the district court affirm the ALJ's decision. Shinn ex rel. Shinn v. Comm'r of Soc. Sec., No. 6:02-cv-668-Orl-31DAB (M.D. Fla. May 30, 2003) [Shinn II]. The magistrate judge recognized that his review of the ALJ's determination had to be somewhat deferential; he was required to affirm if the decision was "supported by substantial evidence," 42 U.S.C. § 405(g), defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Pereles, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quotation marks omitted).

The magistrate judge began by agreeing with the ALJ's implicit and unexplained decision to base his determination of whether Yvonne met the Listings exclusively on medical evidence, without taking into account the testimony of her mother. He elaborated that the testimony of Yvonne's mother about the pain from which Yvonne suffered was irrelevant in deciding whether Yvonne suffered from recent, recurrent, severe vaso-occlusive crises. The magistrate judge explained,

> In order to meet a Listing, Plaintiff must show that she has a
> diagnosed condition and provide objective medical reports
> documenting that this condition meets the specific criteria of the
> applicable listing and the duration requirement. The testimony of a
> parent is not an objective medical report documenting the severity of
> a condition.

Shinn II, at 7 (citation omitted).

Focusing exclusively on the sufficiency of the medical evidence, the magistrate judge held:

> there is substantial evidence in the record to support the ALJ's
> conclusion that Plaintiff's disease was not of listing severity. While
> Plaintiff was briefly hospitalized four times, the medical records
> reflect a short course of conservative treatment, with no transfusions,

11

complications or intensive care admissions.  Plaintiff immediately responded to treatment and was discharged in stable condition and "doing well."

Shinn II, at 6-7.  The magistrate judge noted that while one of Yvonne's doctors said her condition "could result in severe crises the ALJ correctly noted that disability cannot be based on what can happen, but on what has happened."  Id. at 7 (emphasis in original).

Due to the insufficiency of the medical evidence in itself, the magistrate judge concluded that there was substantial evidence supporting the ALJ's ruling that Yvonne's limitations were not "marked and severe" because they did not meet or medically equal those specified in the Listings for her impairment.  He reinforced this conclusion by pointing out that "two non-examining state agency doctors reviewed the medical evidence and opined that Plaintiff's disease did not meet or equal the Listings."  Shinn II, at 8.  Consequently, he agreed that Yvonne was ineligible for SSI benefits. The magistrate judge never reviewed the ALJ's conclusion that Yvonne's limitations were not functionally equivalent to the limitations specified in the Listings, or the ALJ's underlying analysis of Yvonne's functioning in the six life domains specified in the C.F.R.

The district court "reviewed the file de novo and concur[red] with [the magistrate judge's] finding that the Commissioner's decision was supported by

12

substantial competent evidence . . . ." Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 6:02-cv-668-Orl-31DAB (July 8, 2003) (order).  Yvonne now appeals this decision.  We consider this appeal essentially as if we were the district court, reviewing the ALJ's ruling rather than the district court judgment.  See Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("Our review in a Social Security case is the same as that of the district court.").  We, like the district court, must assess whether the ALJ's finding was supported by substantial evidence. Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).

### III.

As noted earlier, Yvonne is entitled to SSI benefits if she demonstrates that the limitations stemming from her severe impairment (sickle cell disease): (1) meet, (2) medically equal, or (3) functionally equal the limitations specified in the Listings.  The ALJ found that none of these possibilities applied in this case.  On appeal, Yvonne challenges only the first determination, claiming that her limitations meet those in the listings.  See Appellant's Br. at 9 ("There are other methods of establishing eligibility including showing that the impairment is medically or functionally equal to a listed impairment which are not relevant to

13

this discussion.”).

We discussed in Part I how the Listings specify five limitations from which people with sickle cell disease may suffer that count as sufficiently “marked and severe” to render a person disabled. Yvonne claims only that she suffers from one of them—“[r]ecent, recurrent, severe vaso-occlusive crises (musculoskeletal, vertebral, abdominal).” Listing § 107.05A. She admits, “There are other listed [limitations] under sickle cell disease which are not relevant to this discussion.” Appellant’s Br. at 9. Consequently, this appeal centers around one very narrow question—whether the magistrate judge’s finding that Yvonne did not suffer from “recent, recurrent, severe, vaso-occlusive crises,” and so did not have “marked and severe” limitations on her life activities and was not disabled—was clearly erroneous.

We agree with the ALJ that the medical evidence Yvonne adduced, standing alone, is insufficient to prove that she suffered from “recent, recurrent, severe, vaso-occlusive crises.” Four hospitalizations for vaso-occlusive crises over the course of several years do not establish that the crises are recurrent. Moreover, although Yvonne’s hearing before the ALJ was on January 22, 2001, she had not been hospitalized since 1998. Consequently, her medical history did not reveal any recent crises. Finally, we concur that the testimony of Dr. Wall, that Yvonne

14

"could" suffer from such crises, hardly establishes in itself that she actually did suffer from them. For these reasons, if the ALJ was correct in focusing exclusively on the medical testimony, we would affirm his decision and conclude that Yvonne has failed to prove that she qualified for disability benefits. We therefore turn to the ALJ's decision to ignore the testimony of Yvonne's mother concerning Yvonne's crises.

The ALJ failed to explain his decision to ignore the testimony of Yvonne's mother in deciding whether Yvonne suffered from these crises. The magistrate judge, affirming this decision, held that only medical evidence is relevant in making this determination. The Commissioner continues to press this position on appeal, arguing:

> In order to meet a listing, the law of this circuit is clear that Claimant must show that she has a diagnosed condition that is included in the listings and provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. . . . Claimant's [sic] offers nothing more than the allegations that she experiences such crises, documented only by testimony from Claimant's parents. This evidence is not objective medical data, and thus, it is insufficient.

Appellee's Br. at 17, 19.

Although the regulations are intricate, confusing, and fail to provide a clear answer, we are forced to disagree.

15

42 U.S.C. § 405(a) provides that "[t]he Commissioner of Social Security . . . shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the methods of taking and furnishing the same in order to establish the right to benefits hereunder." Under one of the rules promulgated by the Commissioner, 20 C.F.R. § 416.912, an ALJ may take a wide range of evidence into account in "reach[ing] conclusions about [an applicant's] medical impairment(s)." 20 C.F.R. § 416.912(a). Specifically, he is permitted to consider "[i]nformation from other sources, as described in § 416.913(d)." Id. § 416.912(b)(4). The referenced provision states, "Other sources include, but are not limited to . . . non-medical sources (for example, spouses, parents and other caregivers . . . )." Id. § 416.913(d)(4). While § 416.913(d) itself permits such non-medical evidence to be considered only in determining whether an applicant's impairment is "sever[e]," the cross-reference to § 416.913(d) in § 416.912(b)(4) makes such evidence generally relevant (absent a specific restriction) in "reach[ing] conclusions about [an applicant's] medical impairment(s)," without limitation. Id. § 416.912(a). An example of such a specific restriction is 20 C.F.R. § 416.913(a), which expressly states that the ALJ "need[s] evidence from acceptable medical sources to establish whether [an applicant] ha[s] a medically determinable impairment(s)."

16

20 C.F.R. § 416.924(a) does not aid Yvonne's case. This provision states, "[The ALJ] will also consider all of the relevant factors in §§ 416.924a and 416.924b whenever [the ALJ] assess[es] your functioning at any step of this process." Section 416.924a(a), in turn, expressly provides, "[The ALJ] considers all relevant information (i.e. evidence) in your case record. The evidence in your case record may include information from . . . nonmedical sources, such as your parents . . . ." Sections 416.924(a) and 416.924a(a) clearly authorize an ALJ to consider nonmedical evidence. However, the remainder of § 416.924a(a) clarifies that such nonmedical evidence is relevant only in assessing "the effects of [a child's] impairment(s) on [the child's] activities and how [the child] function[s] on a day-to-day basis." Id. § 416.924a(a)(2). This is best understood as authorizing an ALJ to consider nonmedical evidence in considering whether the limitations stemming from a child's impairment are functionally equivalent to the limitations specified in the Listings—a showing Yvonne did not attempt to make. Neither of these sections authorize the consideration of nonmedical evidence in determining whether the limitations from which an applicant suffers actually meet the limitations specified in the Listings. Section 416.924a(a)(1), in contrast, authorizes the use of "medical evidence" in assessing the "nature and severity of [an applicant's] impairments." This seems to cut further against the use of

17

parental testimony in determining whether Yvonne's impairment was of "listing

level severity"—that is, whether it gave rise to vaso-occlusive episodes.

The instructions explaining how to use the Listings are similarly ambiguous.

They state that, under each impairment contained in the Listings, there is a section

discussing the "required level of severity of impairment" from which an applicant

must suffer to be considered disabled. Id. § 416.925(c). Each such section

specifies "one or more sets of medical findings" that must apply to an applicant for

that applicant's impairment to meet the Listings. Id. That is, each section lists the

various limitations from which an applicant may suffer that count as sufficiently

marked and severe to render that person disabled. The regulation specifies that

"[t]he medical findings consist of symptoms, signs, and laboratory findings." Id.

Each of these terms is specifically defined in the regulations.

A "symptom" is an applicant's

> own description of [her] physical or mental impairment. If [the
> applicant is] a child under age 18 and [is] unable to adequately
> describe [her] symptom(s), [the ALJ must] accept as a statement of
> this symptom(s) the description given by the person who is most
> familiar with [the applicant], such as a parent . . . . [The applicant's]
> statements (or those of another person) alone, however, are not
> enough to establish that there is a physical or mental impairment.

Id. § 416.928(a). A "sign," in contrast, is an "anatomical, physiological, or

psychological abnormalit[y] which can be observed, apart from [an applicant's]

18

statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." Id. § 416.928(b). Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic technique[]." Id. § 416.928(c). According to these definitions, nonmedical evidence is permissible to prove the existence of symptoms, but not signs or laboratory findings. This point is further emphasized in a later provision that states, "[The ALJ] will consider all of [an applicant's] statements about [her] symptoms . . . ." Id. § 419.929(a). Thus, the admissibility of Yvonne's mother's testimony seems to hinge entirely on whether the presence of vaso-occlusive crises is a "symptom" or a "sign" of sickle cell disease.

There is nothing further in the regulations to guide us in making this determination. As discussed above, however, the general policy permeating these regulations is that ALJs should consider all available evidence, including nonmedical evidence. See id. §§ 416.924a(a) ("[The ALJ] consider[s] all relevant information (i.e., evidence) in your case record. The evidence in your case record may include information from medical sources . . . and nonmedical sources, such as your parents, teachers, and other people who know you."); 419.929(a) ("In determining whether you are disabled, [the ALJ] consider[s] all your symptoms,

19

including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence."). The ALJ's ruling expressly referred to this general policy, stating, "In applying the steps of the sequential disability evaluation process, the undersigned will consider all relevant information (i.e., evidence) in the case record. This may include information from . . . non-medical sources, such as the claimant's parents. . . ." Shinn I, at 2. Moreover, for the reasons we outline below, it would be unreasonable to ignore the testimony of Yvonne's mother concerning the repeated onset of what, to all outward appearances, seem to be pain crises or vaso-occlusive crises. Consequently, we rule that vaso-occlusive crises are a "symptom" of sickle cell disease, and so the ALJ erred in not considering the testimony of Yvonne's mother.

None of the authorities cited by either the magistrate judge or the Commissioner counsel a different conclusion. The only relevance of most of the cited sources, including 20 C.F.R. § 416.925(d), Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002), and Bell v. Bowen, 796 F.2d 1350 (11th Cir. 1986), is that they happen to mention the word "pain." Of the cases cited, the only one on point is Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987), which held, "In order to meet a listing, the claimant must (1) have a

20

diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement."

This statement, however, was dicta, provided merely for background. The only issue in Wilkinson was whether the medical evidence offered by the applicant was sufficient to demonstrate that the applicant suffered from particular limitations specified in the Listings. Because the applicant did not seek to introduce non-medical evidence, this court had no cause to pass on the general admissibility of non-medical evidence in determining whether an applicant suffers from a limitation in the Listings. Consequently, Wilkinson cannot be read as holding that only medical evidence can be taken into account; to the degree that it is interpreted in such a way, that holding is not binding upon us. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1315 (11th Cir. 1998) ("[D]icta in our judicial opinions is not binding on anyone for any purpose.").

In reaching this conclusion, we part ways with the Eighth Circuit in Nash ex rel. Alexander v. Bowen, 882 F.2d 1291 (8th Cir. 1989), which on materially indistinguishable facts denied benefits to an applicant. Although the applicant's mother and grandmother "clearly indicated that [the applicant's] pain episodes were recurrent and severe . . . [n]o medical opinion . . . ha[d] been obtained to

21

explain the presence of these crises and to determine whether they meet the listing requirement." Id. at 1293-94. Because the Alexander court failed to explain why such a medical opinion was necessary, however, we do not hesitate in charting our own course.

The ALJ erred in failing to consider the testimony of Yvonne's mother. The substance of that testimony, along with the medical testimony discussed above, may be sufficient to prove that Yvonne suffered from "recent, recurrent, severe vaso-occlusive crises." Yvonne's mother described Yvonne's four hospitalizations for pain crises which the ALJ did consider in his analysis of Yvonne's medical history.

She then explained, "The doctors said that if I was able to maintain her at home that I could as long as I got the fluids in her as long as I was able to maintain her pain . . . ." Yvonne's mother then testified that Yvonne had many crises at home for which she wasn't taken to the hospital because "[t]hey weren't as severe as the ones where she had the high fever, and I was able to give her the liquids and maintain her pain. So, I was able to keep her at home and maintain it at home." In treating Yvonne at home rather than constantly having her hospitalized, her mother was following the advice of Yvonne's physician.

These crises occurred with some frequency. "Sometimes she might go a

22

month without having one. Sometimes she'll have two in a month. I would say in the last two years roughly between ten and twelve. Maybe more. . . . Sometimes she would have it every month." Describing the crises Yvonne endured at home, her mother testified, "Some are worse than others. . . . [T]here's been times when they've been worse where she wouldn't sleep during the night. She was constantly in pain. Even if I gave her the Tylenol with the Codeine it didn't help. . . ." During these crises Yvonne experienced "[l]oss of appetite. Her sleeping schedule was off. She didn't want to play with her twin sister. . . . She did not want to be touched."

Major crises would last between four and five days. The November before the hearing Yvonne had a crisis that lasted a week and a half, though she wasn't hospitalized for it. The minor crises, in contrast, would last between two and three days. Though Yvonne lost both her appetite and interest in playing during minor crises, these consequences weren't as pronounced as during a major crisis.

Yvonne's mother obviously lacks the medical expertise to testify that the episodes Yvonne regularly suffered in the months leading up to the hearing were specifically vaso-occlusive crises. However, the undisputed medical evidence is that Yvonne has sickle cell disease. The undisputed testimony of Yvonne's treating physician, Dr. Wall, is that this impairment "could" lead to vaso-occlusive

23

crises. The Commissioner's brief admits that "[v]aso-occlusive events are associated with severe local pain . . . . Abdominal pain may be severe . . . ." Appellee's Br. Ex. 1 at 1. Yvonne's mother (who was found "essentially credible" by the ALJ) testified that every month or so, Yvonne would experience painful episodes where she would not want to use a particular part of her body or be touched, and lost interest in eating and playing. Yvonne's mother would administer the treatments that the Commissioner's brief specifies are appropriate for vaso-occlusive crises, "[a]cetaminophen [Tylenol] with codeine." Id. Her mother also took the preventative steps outlined in the Commissioner's brief in an attempt to reduce the frequency of these episodes—"adequate oral fluid intake and . . . pain . . . control[] with oral medication. . . . ." Id.

Thus, Yvonne's mother's testimony suggests that Yvonne suffered episodes that closely resemble those Dr. Wall specifically warned "could" happen, fit the description of vaso-occlusive episodes, were treated as vaso-occlusive episodes, and resemble other crises for which Yvonne was hospitalized that were expressly declared vaso-occlusive episodes by medical personnel. Once the testimony of Yvonne's mother is considered, it builds a persuasive case that Yvonne suffered from "recent, frequent severe vaso-occlusive crises."

It might be objected that the ALJ's conclusion was nevertheless supported

24

by "substantial evidence" because, as the magistrate judge found, "two non-examining state agency doctors reviewed the medical evidence and opined that Plaintiff's disease did not meet or equal the Listings." Shinn II, at 8. In general, we would be hesitant to rule against Yvonne on this basis because the ALJ never mentioned these state physicians anywhere in his ruling. Moreover, as the magistrate judge's quote reveals, the state physicians based their conclusion solely on the "medical evidence," to the apparent exclusion of the testimony of Yvonne's mother as to the repeated crises that occurred for which Yvonne was not hospitalized. Consequently, because their opinions were based on woefully incomplete evidence, they should not be accorded a great amount of weight. See 20 C.F.R. § 416.919n (stating that a complete report of a consultative examination must contain "[a] detailed description, within the area of specialty of the examination, of the history of [the applicant's] major complaint(s)"); see also id. § 416.927(e)(2) ("Although [the ALJ] consider[s] opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing[s] . . . the final responsibility for deciding these issues is reserved to the Commissioner."). In light of the admissibility of Yvonne's mother's testimony, these factors should be considered by the Commissioner on remand.

25

The judgment of the district court is VACATED. This case is REMANDED to the district court, with instructions to REMAND the matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.