[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14458

Non-Argument Calendar

_____

ROSA RODRIGUEZ obo R.C.,
a minor child,

Plaintiff-Appellant,

*versus*

ACTING COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,
Nancy Berryhill,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:19-cv-22548-KMM

———————————————

Before WILSON, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Rosa Rodriguez, on behalf of her minor son R.C.,[1] appeals the district court's order affirming the administrative law judge's denial of R.C.'s application for supplemental security income under the Social Security Act. For the reasons stated below, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

R.C. was born to Rosa Rodriguez on October 8, 2007. He applied for supplemental security income through counsel on May 8, 2015, alleging that he became disabled on October 8, 2007—i.e., that he was born disabled. The application asserted that R.C. has attention deficit hyperactivity disorder ("ADHD"). The symptoms of ADHD include difficulty attending to and completing tasks, trouble paying attention, hyperactivity, and lack of concentration.

---

[1] Rodriguez's son, the claimant, is referred to by his initials to preserve his anonymity.

Rodriguez indicated that R.C.'s ability to communicate was limited, that his ability to progress in learning was somewhat limited, that his impairments affected his behavior with other people, and that his ability to help himself and cooperate with others in caring for his personal needs was impaired. Rodriguez stated that R.C. took 5 milligrams of Focalin to manage his symptoms and that he had to be separated from other children due to behavioral problems.

On August 25, 2015, R.C.'s application was rejected by the Social Security Administration ("SAA") because, in its view, R.C. was not disabled within the meaning of the relevant regulations. Specifically, the "Disability Determination Explanation" stated that R.C. had: (1) a "less than marked" limitation in acquiring and using information; (2) a "marked" limitation in attending and completing tasks; (3) no limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in his health and physical wellbeing; and (6) a "less than marked" limitation in caring for himself. Rodriguez filed for reconsideration. In mid-November 2015, the SSA affirmed that R.C. was not disabled.

Rodriguez then requested a hearing before an administrative law judge. The hearing was held on November 7, 2017. The administrative law judge rendered her decision on August 10, 2018. First, the administrative law judge concluded that R.C. had not engaged in substantial gainful activity since the filing date. Second, the administrative law judge concluded that R.C.'s ADHD, speech

and language impairment, and developmental delay in fine motor skills were severe. Nevertheless, the administrative law judge concluded that R.C. did not have an "impairment or combination of impairments that" equaled "the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and thus was not disabled within the meaning of the regulation.

In the fall of 2018, Rodriguez appealed the administrative law judge's denial to the SSA's Appeals Council. On April 15, 2019, the Appeals Council denied her request for review because it did not find that the administrative law judge "abused [her] discretion," that there was "an error of law," that the "decision [was] not supported by substantial evidence," or that "public interest" was implicated.

About two months later, on June 19, 2019, Rodriguez filed a complaint in the District Court for the Southern District of Florida. Rodriguez and the SSA cross-moved for summary judgment. Rodriguez made substantially the same arguments she makes here: that the administrative law judge did not appropriately consider the evidence of Doctors Maria Gorelick and Elsa Marban and erred in finding that R.C.'s impairments did not at least functionally equal the listed impairments.

The case was assigned to a magistrate judge who, in her report and recommendation, recommended that Rodriguez's motion for summary judgment be denied and the SSA's motion for summary judgment be granted. First, the magistrate judge concluded that the proffered evidence of Dr. Gorelick was not a

"medical opinion[] that the administrative law judge was required to weigh" and, even if it was considered as a medical opinion, the failure to assign it weight was harmless as it was relied upon by the administrative law judge and consistent with the judge's findings. Second, the magistrate judge found that the administrative law judge did not err in assigning partial weight to Dr. Marban's opinion because it was at odds with other evidence and that, even if the opinion was improperly discounted, the opinion was consistent with the administrative law judge's findings.  Additionally, the magistrate judge disagreed with Rodriguez that some of Dr. Marban's evidence—the "Weschler Intelligence Scale" scores—constituted *prima facie* evidence of a marked or extreme limitation because, the magistrate judge said, the report did not translate the scores into standard deviations.  Finally, the magistrate judge concluded that there was substantial evidence to support the administrative law judge's finding that R.C. had "less than marked limitation in the domain of acquiring and using information" and "did not have a marked limitation in the domain of moving about and manipulating objects."

Rodriguez objected to the district court, arguing that the magistrate judge improperly discounted certain test score evidence because it did not translate the scores into standard deviations. Specifically, Rodriguez argued that "the conversion itself from percentile rank . . . to standard deviations[] is no more complicated tha[n] reading a simple table" and does not involve any "interpretation."

On September 29, 2020, the district court disagreed with Rodriguez's objections and adopted the magistrate judge's finding that "discounting Dr. Marban's opinion was not error."[2]  The district court noted that the "report which contains the[] results does not explain where Dr. Marban's benchmarks are derived from, nor what the scores mean in context."  While Rodriguez, in her objections to the report and recommendation, explained how to convert percentile to standard deviation using a "simple table," the district court explained that neither the administrative law judge nor magistrate judge had that table.  The district court also independently considered the table and noted that it "lists no author or explanation as to how it was derived."  Finally, the district court noted that "discounting Dr. Marban's opinions" was especially appropriate because "Dr. Marban's test results were inconsistent with and undercut by her opinions."  This timely appeal ensued.

## II.    STANDARD OF REVIEW

When an administrative law judge denies benefits and the Appeals Council denies review, we review the administrative law judge's decision as the Social Security Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "[W]e

---

[2] The district court held that it did not "need [to] adopt the [magistrate judge's] finding that even if the ALJ had erred, any such error was harmless."  The district court also stated that the magistrate judge did not err in finding that Dr. Marban's opinions comported with the administrative law judge's decision—and thus would be harmless to exclude—because the magistrate judge "did not have the benefit of Plaintiff's explanation and conversion table."

review *de novo* the legal principles upon which the Commissioner's decision is based," but "review the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "[T]he threshold" under the substantial evidence standard "is not high." *Id.* Finally, errors made by an administrative law judge will not warrant reversal if they are harmless. *See, e.g., Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir. 1984).

## III.    ANALYSIS

Despite the expansive, multi-factor, fact-intensive test for ascertaining disability qualification, the issues in this case are quite narrow. First, Rodriguez takes issue with how much weight the administrative law judge gave to Doctors Marban and Gorelick's opinions. Second, Rodriguez argues that the administrative law judge's decision was not supported by substantial evidence.

Before turning to the merits, we address first the applicable law at issue in this case. A child under the age of eighteen is considered disabled, and thus entitled to benefits including supplemental security income, if the child has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations . . . that has lasted

or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.

A "[m]arked and severe functional limitation[]," in turn, is defined by a three step evaluation. *Id.* § 416.902(h); *see id.* § 416.924. First, if the child can engage in "substantial gainful activity," then the child is "not disabled regardless of . . . medical condition." *Id.* § 416.924(b). Second, the child's impairment must be determined to be "severe"; "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations" is not sufficient. *Id.* § 416.924(c). Finally, the child's impairment "must meet, medically equal, or functionally equal the listings," which make up a long list of qualifying impairments promulgated by the SSA. *Id.* § 416.924(d); *see id.* pt. 404, subpt. P, app. 1 (listing impairments).

To "functionally equal the listings," the child's impairment may either A) "result in 'marked' limitations in two domains of functioning"[3] or B) result in "an 'extreme' limitation in one domain"[4] of functioning. *Id.* § 416.926a(a). There are six domains of functioning: "(i) Acquiring and using information; (ii) Attending

---

[3] A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities"; it is "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i).

[4] An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities"; it is "more than marked." 20 C.F.R. § 416.926a(e)(3)(i).

and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and[] (vi) Health and physical well-being." *Id.* § 416.926a(b)(1).

## A. The Administrative Law Judge Appropriately Considered the Evidence of Doctors Gorelick and Marban.

When making a disability determination, the SSA requires its administrative law judges to consider "every medical opinion" the SSA receives. 20 C.F.R. § 416.927(c). "Medical opinions" are, in turn, "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* § 416.927(a)(1).

An administrative law judge "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Factors influencing the weight given to a medical opinion include the length, nature, and extent of an examining or treatment relationship, the amount of evidence it provides to bolster its conclusions, its consistency with the record, and its degree of specialization. *See* 20 C.F.R. § 416.927(c)(1)–(5).

A medical opinion from a treating doctor "must be given 'substantial or considerable weight' unless 'good cause' is shown to give it less weight." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 (11th Cir. 2018) (quoting *Winschel*, 631 F.3d at

1179).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).  This is not a searching inquiry; the administrative law judge need only be specific, *see Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."), and need not address "every piece of evidence in [her] decision," *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

1. *The Administrative Law Judge Sufficiently Considered and Evaluated the Records from Dr. Gorelick.*

Rodriguez argues that the administrative law judge in this case failed to adequately address the medical opinion of the treating psychiatrist, Dr. Gorelick.  She says that "Dr. Gorelick extensively documented the claimant's symptoms, diagnoses, and prognoses" in her notes, including about the effectiveness of the treatment plan and R.C.'s ongoing symptoms.  Hence, says Rodriguez, Dr. Gorelick afforded the administrative law judge with a medical opinion.  Therefore, she asserts that the administrative law judge "was obligated to articulate the weight she accorded" to that opinion.

We need not decide if Dr. Gorelick's notes are a medical opinion or not; even if they are, Rodriguez has not shown that the administrative law judge's alleged error in not explicitly addressing

the notes' weight could have had any effect on the decision. First, this is not a situation where the administrative law judge "reached the result that [she] did by focusing upon one aspect of the evidence and ignoring other parts of the record." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Rather, the administrative law judge factored the notes into the ultimate decision. For example, the administrative law judge noted that "medical providers indicated that [R.C.] is easily distracted and fidgety, needs frequent redirection, and has difficulty staying on task and completing work independently" and cited to Dr. Gorelick's notes saying substantially the same thing.

Second, the record does not support Rodriguez's contention that the administrative law judge mischaracterized Dr. Gorelick's notes. The administrative law judge considered several of R.C.'s specific symptoms that were noted in the documents, including R.C.'s distractibility, difficulty staying on task and completing work independently, and hyperactivity. Neither is the administrative law judge's assessment that R.C. "was 'overall' stable on medication and was less distracted and more focused" an unfair characterization in light of the record. After R.C. was given a prescription for five milligrams of Focalin, one of his providers noted that "[R.C.] is stable on med[ication], less distracted and more focused on tasks[, though] [s]till impulsive and rebellious." And after his dosage was increased to ten milligrams on June 25, 2015, the documentation noted an even more marked improvement.

Third, and relatedly, nothing in Dr. Gorelick's notes actually contradicts the outcome in the hearing below; there is no reason to think that the administrative law judge did not accord Dr. Gorelick's evidence controlling weight. The administrative law judge cited to the Gorelick documents when she concluded that R.C. "has a marked limitation in attending and completing tasks," one of the six domains that can show a functional equivalence to the listings. *See* 20 C.F.R. § 416.926a(b)(1). Rodriguez has not explained how the Gorelick documents, which address the symptoms of ADHD like low attention span and hyperactivity, could prove any of the other five domains. We therefore conclude that the error of the administrative law judge, if any, was harmless.

2. *The Administrative Law Judge Sufficiently Considered and Evaluated the Medical Source Opinion from Dr. Marban.*

Next, Rodriguez argues that the administrative law judge failed to accord proper weight to Dr. Marban's evaluation of R.C.[5] The administrative law judge accorded Dr. Marban only "[p]artial

---

[5] Rodriguez's argument here is actually two. First, she argues that the administrative law judge did not evaluate Dr. Marban's "medical opinion" in line with 20 C.F.R. § 416.927(c). Second, even if the administrative law judge did properly evaluate the opinion, Rodriguez argues that the administrative law judge did not have substantial evidence to conclude that R.C. lacked a marked limitation in the domain of acquiring and using information in light of Dr. Marban's findings. Because the second argument calls into question whether the administrative law judge had substantial evidence for her findings, we address this argument in the substantial evidence portion of the decision.

weight" because the administrative law judge found that "there [was] no support" for Dr. Marban's conclusion that R.C.'s "speech and language deficits" posed "'marked' difficulties." This was error, in Rodriguez's view, because it overlooked every "other aspect of Dr. Marban's opinions even though the explicit purpose" of the "evaluation was to determine whether [R.C.] had a learning disorder, not a speech and language disorder."

We conclude that the administrative law judge's consideration of the weight to accord to Dr. Marban was sufficient. To begin with, the administrative law judge's finding was explicit: Dr. Marban's evidence was accorded "[p]artial weight." In light of that, and the more general discussion of Dr. Marban's findings in the administrative law judge's decision, there is no question that Marban's medical opinion was "evaluate[d]." 20 C.F.R. § 416.927(c).

This leaves us to consider whether the administrative law judge's evaluation was supported by substantial evidence. In assessing the evidence, we are guided by the principle that we may neither "decide the facts anew, reweigh the evidence, [] substitute our judgment for that of the [administrative law judge]," *Winschel*, 631 F.3d at 1178 (quoting *Phillips*, 357 F.3d at 1240 n.8), nor require "that the ALJ specifically refer to every piece of evidence in [her] decision," *Dyer*, 395 F.3d at 1211.

We conclude that the administrative law judge's decision was supported by substantial evidence. The administrative law judge noted that the record supported Dr. Marban's finding that R.C. had "speech and language deficits," but not that those deficits

were drastic enough to "pose 'marked' difficulties." Specifically, the administrative law judge credited a Speech and Language Evaluation Report which found that, though R.C.'s speech quality was impeded by a lisp, he was 100 percent intelligible. To find that the administrative law judge's decision was not supported by substantial evidence would require us to reweigh the evidence. While the administrative law judge did not explicitly address every aspect of Dr. Marban's evaluation in her weight-assignment, she was not required to do so. Neither does it appear that the administrative law judge unfairly ignored those other aspects. For example, she cited the evaluation when noting that "[R.C.'s] academic skills were in the high average range."

## B. Substantial Evidence Supports the Administrative Law Judge's Finding that Claimant's Impairments Did Not Functionally Equal the Listings.

Finally, Rodriguez argues that the administrative law judge could not have concluded, based on substantial evidence, that R.C.'s impairments did not functionally equal the listings. As relevant here, a claimant may functionally equal the listings by having a "marked impairment" in at least two of the six domains of functioning. 20 C.F.R. § 416.926a(a). A "marked impairment" is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i). A "marked limitation" would be reflected by "standardized test scores that are at least two . . . standard deviations below the mean." Id.

Rodriguez challenges the administrative law judge's findings in only two of the six domains of functioning: "Acquiring and using information" and "Moving about and manipulating objects." *Id.* § 416.926a(b)(1). Because the administrative law judge concluded that R.C. has a marked limitation in the domain of "attending and completing tasks," a marked limitation in either of the other two domains would entitle R.C. to supplemental security income.

1. *The Administrative Law Judge's Conclusion that R.C. Did Not Have a Marked Limitation Acquiring and Using Information Was Supported by Substantial Evidence.*

The domain of "acquiring and using information" considers a child's ability to perceive, understand, and apply information based on his age. *Id.* § 416.926a(g). A child between the age of six and twelve without an impairment should be able to "read, write, and do math, and discuss history and science" in both "academic" and "daily living situations." *Id.* § 416.926a(g)(2)(iv). An impairment in this area might manifest itself in the form of a lack of "understanding of words about space, size, or time," an inability to "rhyme," poor memory, "difficulty solving mathematics questions," or "talk[ing] only in short, simple sentences." *Id.* § 416.926a(g)(3).

In finding that R.C. had a less than marked limitation in "acquiring and using information," the administrative law judge noted that:

The claimant's teachers stated that the claimant has a problem in acquiring and using information because he needs to be redirected during tasks and needs help staying on tasks in order to complete activities. Despite the claimant's ADHD, he nonetheless earned mostly A's, B's, and C's on his report card. He passed the fourth grade, did fairly well in school, and received awards at the end of the school year. During a learning disability consultative evaluation, the claimant had a full scale IQ in the low average range, fluid reasoning in the average range, and verbal comprehension in the extremely low range. His written language ability was in the advanced range, written expression was in the average to very superior range, and overall ability to express himself in writing was average to advanced. His academic achievement was in the average range in math. Overall, his academic skills were in the high average range compared to others at his age level.

(citations omitted).

Rodriguez asserts that the administrative law judge improperly ignored Dr. Marban's comprehensive evaluation by finding, among other things, that R.C. was in the 0.1 percentile of verbal similarities, the 5th percentile in vocabulary, the 9th percentile of digit span working memory, the 1st percentile of verbal comprehension, and the 13th percentile of Full Scale IQ. Rodriguez argues

20-14458              Opinion of the Court                    17

that because percentiles "can be easily converted to" Z-scores,[6] the administrative law judge erred by not accounting for the Z-score of R.C.'s results, which would have been at least "two standard deviations below the mean."

As an initial matter, the issue before us is whether there was substantial evidence to support the administrative law judge's decision, not whether there could be substantial evidence in the record to support a different decision. *See, e.g., Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1282 (11th Cir. 2004) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." (quoting *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996))). Thus, highlighting proof in the record that supports a party's desired outcome, without explaining why the administrative law judge's proffered reasoning was itself flawed, does not warrant a reversal.

Even so, we conclude that the administrative law judge did not improperly discount the evaluation results. Because Rodriguez failed to present the converted Z-scores to the administrative law judge, we cannot conclude that the administrative law judge ignored results that were not presented to her. *Cf. McCruter*, 791 F.2d at 1548 ("[The ALJ] could have reached the result he did only by ignoring the objective medical evidence regarding [the claimant's] physical condition and also the evidence of the government's

---

[6] A Z-score reflects the number of standard deviations that a given point is above or below the mean in a data set.

vocational expert . . . ."). We therefore affirm the district court's finding that the magistrate judge and administrative law judge did not err in failing to "*sua sponte* convert Dr. Marban's raw test scores to standard deviations."

Moreover, even if Dr. Marban's evaluation did constitute *prima facie* evidence of a marked limitation, her own testimony undercut its weight. In addition to the low percentile scores, and the Z-score analogs, Dr. Marban found that R.C.'s "sight reading ability and spelling are very advanced. . . . [H]is fluency with reading tasks is advanced[,] . . . [and his] writing ability is advanced." In light of her additional note that "[R.C.'s] scores may have been impacted to some extent by his high level of distractibility," it would not be error for the administrative law judge to decline to extend controlling weight to the findings, even if they could *prima facie* show a marked limitation.

Second, Rodriguez argues that the administrative law judge ignored the results of R.C.'s language evaluation. We conclude that this argument is without merit. First, the administrative law judge cited the evaluation in her report when she concluded that "[R.C.'s] speech was 100% intelligible despite having a lisp." Second, this argument suffers from the same impediment as the Marban argument—the question is whether the decision was supported by substantial evidence, not whether there is contradictory evidence in the record. We therefore conclude that the administrative law judge's finding that R.C. lacked a marked limitation in this domain was supported by substantial evidence.

2. *The Administrative Law Judge's Conclusion that R.C. Did Not Have a Marked Limitation Moving About and Manipulating Objects Was Supported by Substantial Evidence.*

The domain of "moving about and manipulating objects" considers a child's "gross and fine motor skills."   20 C.F.R. § 416.926a(j).  A child between the ages of six and twelve without an impairment should be able to "move at an efficient pace," "enjoy a variety of physical activities," "use many kitchen and household tools independently, . . . and write."  *Id.* § 416.926a(j)(2)(iv). An impairment in this area might manifest itself in the form of "muscle weakness, joint stiffness, or sensory loss," "jerky or disorganized locomotion or difficulty with [] balance," "difficulty coordinating gross motor movements," "difficulty with sequencing hand or finger movements," "difficulty with fine motor movement," or "poor eye-hand coordination."  *Id.* § 416.926a(j)(3).

The administrative law judge found that R.C. had a less than marked limitation in "moving about and manipulating objects":

> The claimant participated in occupational therapy because he was noted to have difficulty with isolating finger movements, using a template to draw a simple picture, tie a knot, draw a simple picture, color a picture, draw within angled and curved paths, print letters, numbers, and simple words, and cut out a picture with scissors.  He was noted to have a 'delay in age appropriate fine motor skills.'  Despite his fine motor deficits, the claimant admitted that he is

> nonetheless able to help with household chores and
> play soccer with his friends.

(citation omitted).

Rodriguez argues that the administrative law judge improperly ignored an evaluation from an occupational therapist tending to show R.C.'s ambulatory impairments.  Specifically, she asserts that R.C.'s scores for motor coordination were very low, that R.C. had difficulty with copying and writing words and sentences, and that R.C. had difficulty connecting dots and identifying shapes.

The administrative law judge did not ignore this evidence. The administrative law judge's decision specifically cited the proffered evaluation for the limitations Rodriguez points out.  She also quoted verbatim from an earlier report from the same occupational therapist when she said that R.C. had difficulty "isolating finger movements."  There is no question, from the administrative law judge or the SSA, that R.C. has limitations with fine motor skills.  Nevertheless, the administrative law judge considered both "gross *and* fine motor skills."  *Id.* § 416.926a(j) (emphasis added). Because the decision is supported by substantial evidence and it is not our place to reweigh the evidence, we affirm the decision of the administrative law judge. *See Winschel*, 631 F.3d at 1178.

## IV.    CONCLUSION

For the foregoing reasons, we therefore affirm the district court's judgment.

**AFFIRMED**.