CARNES, Circuit Judge,
concurring in the denial of rehearing en banc:
With its denial of rehearing en banc in this case, this Court has left intact our circuit law on Booker plain error as it is laid out by our panel decision in this case, United States v. Rodriguez, 398 F.3d 1291 (11th Cir.2005), and by our decisions in United States v. Duncan, 400 F.3d 1297 (11th Cir.2005), United States v. Shelton, 400 F.3d 1325 (11th Cir.2005), and United States v. Curtis, 400 F.3d 1334 (11th Cir.2005) (per curiam).
Our Rodriguez decision, which was followed in Duncan and Curtis, establishes that the use of extra-verdict enhancements under the pr e-Booker mandatory guidelines scheme is Sixth Amendment error that is plain. Rodriguez, 398 F.3d at 1298-99; Duncan, 400 F.3d at 1304; Curtis, 400 F.3d at 1335. Shelton adds to our circuit law the rule that while pre-Booker sentencing free of any extra-verdict enhancement is not a violation of the Sixth Amendment, it is statutory error under the remedial part of the Booker decision. Shelton, 400 F.3d at 1330-31. The upshot of our four decisions is that the first two prongs of the four-prong plain error test are met in all pr e-Booker sentencing cases.[1] To that common holding Shelton effectively adds that where the third prong of the plain error test is met in these cases, the fourth one will be also. See id. at 1333-34. Because the effect of Booker error is the same regardless of the type, our decisions make no functional distinction between constitutional and statutory error. For purposes of the plain error rule, unpreserved error is unpreserved error.
Under our decisions, where the Booker issue is raised for the first time on appeal the third prong of the plain error test will be the decisive one. As we explained in our panel opinion, the Supreme Court has instructed us that the third prong requires that an error have “affect[ed] substantial rights,” which almost always means that the error “must have affected the outcome of the district court proceedings.” Rodriguez, 398 F.3d at 1299 (quoting United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993)). The standard for showing prejudice is the *1263 familiar reasonable probability of a different result formulation, which means a probability “ ‘sufficient to undermine confidence in the outcome’ of the proceeding.” United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). Of critical importance, “[i]t is the defendant rather than the [g]overnment who bears the burden of persuasion with respect to prejudice.” Olano, 507 U.S. at 734, 113 S.Ct. at 1778.
Our four decisions do not adopt a per se rule about whether the third prong of the plain error test will be met in pr e-Booker sentencing cases. Instead, the result depends, as it should, on the facts of the case. For that reason, it is entirely consistent for Rodriguez, Duncan, and Curtis to have concluded that the defendants in those three eases did not carry their burden of establishing the third prong of the plain error test, while Shelton concluded that the defendant in that case did.
I.
Judge Tjoflat would have this Court adopt a per se rule that the third prong of the plain error test is met in every case of pr e-Booker constitutional error, and he would do it in a way that would also preclude application of the harmless error doctrine even in the most extreme case. His thesis is that a Booker constitutional error is a structural error or defect, and for that reason there is no need for the defendant to show third-prong prejudice for plain error purposes. Judge Tjoflat brands all pr e-Booker sentences in which there was constitutional error “illegal,” and he offers no plausible reason why the fourth prong of the test would not be met if the third prong were. The bottom line of his approach is automatic reversal of every pre-Booker sentence in which there was an extra-verdict enhancement. That approach does offer the attraction of reducing this Court’s workload, because nothing is easier to apply than an automatic rule that dictates the same result regardless of the facts. Ease of application aside, the proposed rule is not legally or logically appropriate in the pre-Booker area. No other judge has ever even suggested this theory, except in the course of rejecting it.
Contrary to Judge Tjoflat’s belief, it simply is not true that “the only real difference” between his approach and that of the Third, Fourth, and Sixth Circuits is that his “offers a more satisfactory rationale for its result.” See Tjoflat, J., dissenting, at 1293. While the situation in the Third Circuit is unclear, under the Fourth and Sixth Circuits’ approach, sentences involving Booker constitutional error may be upheld under the harmless error doctrine. See, e.g., United States v. Tate, 124 Fed.Appx. 398, 404 (6th Cir.2005) (unpub.); United States v. Bethea, No. 04-5022, 2005 WL 807016, *1 (4th Cir. Apr.8, 2005) (unpub.). As Judge Tjoflat concedes, his structural error approach precludes application of that harmless error doctrine. See Tjoflat, J., dissenting, at 1282-83 (“[Structural errors ‘defy analysis by “harmless-error” standards’ and are per se reversible if an objection is made at trial.”) (quoting Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)). No matter how clear it may be from the record that the defendant would not have received a lesser sentence, a pr e-Booker sentence that involved an extra-verdict enhancement could not be affirmed under harmless error analysis if we followed his suggestion. None of the *1264 eleven other circuits to address Booker plain error issues have taken such an extreme approach.[2]
The First Circuit has expressly rejected Judge Tjoflat’s structural theory of Booker plain error. This is what that Court said about it:
Nor is this structural error. In certain structural error cases, those which “undermin[e] the fairness of a criminal proceeding as a whole,” errors can be corrected regardless of an individualized showing of prejudice to the defendant. Dominguez Benitez, 124 S.Ct. at 2339; Olano, 507 U.S. at 735, 113 S.Ct. 1770, 123 L.Ed.2d 508; see Arizona v. Fulminante, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (providing examples of structural error). Because sentencing under a mandatory system is not an error that “undermines the fairness of a criminal proceeding as a whole,” as we discuss above, a Booker type error is not a structural error; the defendant must convince us of prejudice. Indeed, had the majority in Booker thought there was structural error, it would have said so.
United States v. Antonakopoulos, 399 F.3d 68, 80 n. 11 (1st Cir.2005); see also United States v. Gonzalez-Huerta, 403 F.3d 727, 733, 2005 WL 807008, *4 (10th Cir.2005) (en banc) (holding that Booker statutory error is not structural); Knox v. United States, 400 F.3d 519, 523 (7th Cir.2005) (explaining why Apprendi error is not structural).
In response to the First Circuit’s reasoning that if Booker error were structural the Supreme Court would have said so, Judge Tjoflat says that the Court did. According to him, the last sentence of Justice Breyer’s Booker majority opinion about remedy tells us that we are dealing with structural error. To see that message in the last sentence of that opinion requires not just a set of reading glasses but also a vivid imagination. Rather than take the sentence out of context, it is best to set. out the entire last paragraph of the opinion:
As these dispositions indicate, we must apply today’s holdings — both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act — to all cases on direct review. That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the “plain-error” test. It is also because, in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.
United States v. Booker, 543 U.S. —, 125 S.Ct. 738, 769, 160 L.Ed.2d 621 (2005) (internal citations omitted).
Focusing on the last sentence, Judge Tjoflat reasons that: 1) because the Supreme Court explicitly said that the harmless error doctrine applies to statutory Booker error, the Court must have meant that the harmless error doctrine does not *1265 apply to constitutional Booker error; 2) because the harmless error doctrine does not apply to constitutional Booker error, this type of error must be structural in nature; and 3) because constitutional Booker error is structural in nature, all constitutional Booker error amounts to the deprivation of substantial rights for plain error purposes. Never has so much been inferred from so little.
There are all kinds of problems with this theory. To begin with, it is based upon a negative pregnant, and as Judge Becker once observed for the Third Circuit, “drawing instruction from Supreme Court passages through the use of the negative pregnant is risky and unsatisfactory.” Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir.2000). Here doing so is particularly unsatisfactory because it has the effect of contradicting a more direct statement in the same paragraph of the same opinion. In the two sentences immediately preceding the one in question, the Supreme Court said that every Booker appeal will not lead to a new sentencing hearing “because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the ‘plain-error’ test.” Booker, 125 S.Ct. at 769.
In that sentence the Supreme Court expressed its belief that some sentences involving Booker error would be affirmed because the defendant could not satisfy the plain error test. The Court’s stated belief that the rigors of the plain error test would weed out some Booker error cases is not surprising given that it has previously instructed us that the power to notice plain error should be exercised “sparingly,” Jones v. United States, 527 U.S. 373, 389, 119 S.Ct. 2090, 2102, 144 L.Ed.2d 370 (1999), and only “in those circumstances in which a miscarriage of justice would otherwise result,” Olano, 507 U.S. at 736, 113 S.Ct. at 1779 (internal quotation omitted). Judge Tjoflat’s position directly contradicts the Supreme Court’s belief that some Booker error cases, even those involving Sixth Amendment violations, will be affirmed because the defendants cannot satisfy the rigorous requirements of the plain error test.
Judge Tjoflat’s structural theory contradicts that stated belief of the Supreme Court, because under his theory the third prong of the plain error test will always be satisfied where there is Booker constitutional error. And the third prong is the decisive one. Every court to address the matter has agreed that Booker error satisfies the first two prongs of the plain error test. Likewise, all of the courts to address the issue have found the fourth prong met in Booker constitutional error cases where the third prong is satisfied. See United States v. Oliver, 397 F.3d 369, 380-81 (6th Cir.2005); United States v. Hughes, 396 F.3d 374, 380-81 (4th Cir.), amended on reh’g by 401 F.3d 540 (4th Cir.2005); United States v. Ameline, 400 F.3d 646, 654-55 (9th Cir.), reh’g en banc granted, 401 F.3d 1007 (9th Cir.2005); Shelton, 400 F.3d at 1333-34; United States v. Coles, 403 F.3d 764, 766, 2005 WL 783069, *3 (D.C.Cir. Apr.8, 2005) (per curiam); see also United States v. Davis, 397 F.3d 173, 183 (3d Cir.2005).[3]
Judge Tjoflat does not provide any persuasive basis for believing that the fourth *1266 prong of the plain error test will not be met as a matter of course if, as he contends, Booker constitutional error is structural. The Supreme Court said in Dominguez Benitez that structural errors “undermin[e] the fairness of á criminal proceeding as a whole.” 124 S.Ct. at 2339. Quoting another Supreme Court opinion, Judge Tjoflat insists that “[b]e-cause structural error affects the framework of the trial itself, its ‘consequences ... are necessarily unquantifiable and indeterminate.’ ” See Tjoflat, J., dissenting, at 1282-83 (quoting Sullivan v. Louisiana, 508 U.S. 275, 282, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993)). In explaining the impact of structural errors, the Supreme Court stated: “Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.” Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) (internal citation omitted).
Because structural error, where it exists, renders a criminal punishment fundamentally unfair, it would be difficult to justify a conclusion that an error that is structural does not “seriously a£fect[ ] the fairness, integrity or public reputation of judicial proceedings,” Olano, 507 U.S. at 732, 113 S.Ct. at 1776 (quotation omitted). See United States v. Recio, 371 F.3d 1093, 1103 n. 7 (9th Cir.2004) (“We note that structural error is particularly likely to satisfy Olano’s fourth prong.”).
So far as can be discovered, no court has ever actually held that an error is structural but fails to meet the fourth prong of the plain error test. However much it may detract from the appeal of the Booker structural error theory, the fact is that adopting that theory will almost certainly result in reversal without regard to the facts of an individual case. That is what the structural error approach generally does and is one reason it is so rarely applied.
The result of Judge Tjoflat’s position that Booker constitutional error is structural error, then, is that every Booker constitutional error will satisfy the plain error test and require reversal and resen-tencing. Thus, in his view, the Supreme Court’s belief about the effect of applying “ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the ‘plain-error’ test,” Booker, 125 S.Ct. at 769, is wrong. Applying the plain error test to unpreserved Booker error will not, as the Court thought, prevent every appeal from leading to a new sentencing hearing. See id.
Seeking to free his theory from the clutches of the Supreme Court’s statement that not every Booker error will meet the requirements of the plain error test, Judge Tjoflat posits that the Court must have meant only Booker statutory error. Beyond satisfying the needs of his theory, there is no reason to interpret the Court’s statement that way. The Court did not say that it expected reviewing courts to apply ordinary prudential doctrines, such as the plain. error test, only in cases of statutory error. Nor is there any reason *1267 in law or logic to distinguish between the two types of Booker error for purposes of the plain error rule. In order to make Judge Tjoflat’s post-Booker plain error theory work, we would have to write into our law a rule that statutory errors could not be treated as structural regardless of their structural effect. No decision of the Supreme Court or of this Court has ever held that, and there is no reason for this Court to do so now.[4]
The heart of Judge Tjoflat’s structural error theory is that Booker constitutional errors affect the sentencing framework in ways that are “necessarily unquantifiable and indeterminate.” Tjoflat, J., dissenting, at 1282-83 (quoting Sullivan, 508 U.S. at 282, 113 S.Ct. at 2083). Yet, as he commendably concedes, Booker constitutional and statutory errors cannot be distinguished based on the effect they may have had on the sentence proceeding. Id. at 1283-85. Everything that can be said about the effect Booker constitutional error may have-on a sentencing proceeding applies with equal force to Booker statutory error. Every difference between what Judge Tjoflat calls the “old model” of sentencing and the “new model” that would be in place on remand .exists regardless of whether there is an extra-verdict enhancement in a case. The presence or absence of prejudice, and the difficulty of determining it, is the same regardless of whether the Booker error is constitutional or statutory. Judge Tjoflat concedes that treating one type of unpreserved Booker error as structural and the other -not, even though they have the same effect on the structure of the proceeding, is “[intuitively ... odd,” id. at 1982. That is an understatement.
*1268 In arguing for the distinction, Judge Tjoflat relies on a dissenting opinion from Booker to dismiss statutory errors as “merely a byproduct of Booker’s ‘unnecessarily broad remedy.’ ” Tjoflat, J., dissenting, at 1295 (citing Booker, 125 S.Ct. at 788 (Stevens, J., dissenting)). That would be fine, except dissenting opinions express dissenting views. In applying the Booker decision, we cannot adopt the dissenting view on the remedy but must instead accept the majority opinion as the law and follow it.
Judge Tjoflat’s theory that Booker constitutional error is structural error is also contrary to this Court’s own en banc decision in United States v. Sanchez, 269 F.3d 1250 (11th Cir.2001), where we discussed at length and rejected the contention that any of the various types of Apprendi error were structural error. Id. at 1272-75. Our decision that Apprendi error is not structural answers the question of whether Booker error is structural, because Booker is an application, of Apprendi once removed. See Booker, 125 S.Ct. at 755-56 (Stevens, J., maj. op.) (“our holding in Blakely applies to the Sentencing Guidelines”); Blakely v. Washington, 542 U.S. —, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004) (“This case requires us to apply the rule we expressed in Apprendi .... ”).
Even if our Sanchez decision did not exist, we still should not hold that Booker error is structural error. The Supreme Court itself has been careful to note that, “[w]e have found structural errors only in a very limited class of cases.” Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). In describing how limited that class of cases is, the Court in Arizona v. Fulminante, listed the following decisions finding structural error: Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (the total deprivation of the right to counsel at trial); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (a biased judge); Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (unlawful exclusion of members of the defendant’s race from a grand jury); McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of the right to self-representation at trial); and Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of the right to a public trial). Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (Rehnquist, C.J., maj. op.). The only case since Fulminante where the Supreme Court has found a structural error is Sullivan v. Louisiana, 508 U.S. 275, 278-82, 113 S.Ct. 2078, 2081-83, 124 L.Ed.2d 182 (1993), which involved an improper jury instruction on the “beyond a reasonable doubt” standard.
After listing those structural error cases, the Supreme Court in Fulminante explained the common thread: “ ‘Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.’ ” Id. at 310, 111 S.Ct. at 1265 (quoting Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986)). By contrast, Booker error does not prevent a trial from serving its function as a vehicle for the determination of guilt or innocence, and it does not render criminal punishment fundamentally unfair. The pre-Booker regime was the law of the land that applied in determining hundreds of thousands of federal sentences in this country over a period of almost two decades. While Booker changes-some of the rules, it *1269 does not compel the conclusion that the sentencing process used in every federal court in this country for the last twenty years was so defective that it resulted in thousands of fundamentally unfair sentences.
The Supreme Court reiterated the rarity of structural error in Neder v. United States, stating that: “[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.” 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (quotation omitted, brackets in original). The same point about the rarity of structural error was made in Chief Justice Rehnquist’s majority opinion in Fulmi-nante. There he listed all of the types of error the Court had held to be subject to harmless error analysis and therefore not structural in nature:
Clemons v. Mississippi, 494 U.S. 738, 752-54, 110 S.Ct. 1441, 1450-51, 108 L.Ed.2d 725 (1990) (unconstitutionally overbroad jury instructions at the sentencing stage of a capital case); Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment Counsel Clause); Carella v. California, 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) (jury instruction containing an erroneous conclusive presumption); Pope v. Illinois, 481 U.S. 497, 501-04, 107 S.Ct. 1918, 1921-23, 95 L.Ed.2d 439 (1987) (jury instruction misstating an element of the offense); Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (jury instruction containing an erroneous rebuttable presumption); Crane v. Kentucky, 476 U.S. 683, 691, 106 S.Ct. 2142, 2147, 90 L.Ed.2d 636 (1986) (erroneous exclusion of defendant’s testimony regarding the circumstances of his confession); Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (restriction on a defendant’s right to cross-examine a witness for bias in violation of the Sixth Amendment Confrontation Clause); Rushen v. Spain, 464 U.S. 114, 117-18 & n. 2, 104 S.Ct. 453, 454-55 & n. 2, 78 L.Ed.2d 267 (1983) (denial of a defendant’s right to be present at trial); United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (improper comment on defendant’s silence at trial, in violation of the Fifth Amendment Self-Incrimination Clause); Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (statute improperly forbidding trial court’s giving a jury instruction on a lesser included offense in a capital case in violation of the Due Process Clause); Kentucky v. Whorton, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979) (failure to instruct the jury on the presumption of innocence); Moore v. Illinois, 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977) (admission of identification evidence in violation of the Sixth Amendment Counsel Clause); Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 1570-71, 36 L.Ed.2d 208 (1973) (admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment Counsel Clause); Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (confession obtained in violation of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)); Chambers v. Maroney, 399 U.S. 42, 52-53, 90 S.Ct. 1975, 1981-82, 26 L.Ed.2d 419 (1970) (admission of evi *1270 dence obtained in violation of the Fourth Amendment); Coleman v. Alabama, 399 U.S. 1, 10-11, 90 S.Ct. 1999, 2003-04, 26 L.Ed.2d 387 (1970) (denial of counsel at a preliminary hearing in violation of the Sixth Amendment Confrontation Clause).
Fulminante, 499 U.S. at 306-07, 111 S.Ct. at 1263 (Rehnquist, C.J., maj. op.) (some citations omitted). The Fulminante Court itself held that the admission of a coerced confession was not a structural, error. Id. at 310, 111 S.Ct. at 1265. Since the Fulminante decision, the Court has added to the list of nonstructural errors in the following decisions: United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 2339 n. 6, 159 L.Ed.2d 157 (2004) (omission of a Fed.R.Crim.P. 11 warning is not a structural error); Neder, 527 U.S. at 4, 14, 119 S.Ct. at 1831, 1836 (judicial usurpation of the jury’s function of determining whether an element of the crime existed is not structural error); Brecht v. Abrahamson, 507 U.S. 619, 628-30, 113 S.Ct. 1710, 1716-17, 123 L.Ed.2d 353 (1993) (the government’s use of the defendant’s post-Miranda-warnings silence to impeach the defendant is not structural error).
Against this flood of decisions holding that various and sundry constitutional and statutory errors are not structural, Judge Tjoflat’s proposition that Booker error is structural is unpersuasive. It would not be enough to make Booker error structural even if, as he argues, defendants had no incentive before Booker to put forward evidence relating to the 18 U.S.C. § 3553(a) factors. Tjoflat, J., dissenting, at 1289. We know that would not be enough because the Supreme Court has held a number of errors not to be structural, even where the error may have prevented or discouraged the defendant from putting forward additional evidence or arguments. For example, in Carella v. California, 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989), the error was in conclusively presuming the element of intent, and in Neder, 527 U.S. at 14-15, 119 S.Ct. at 1836-37, the error was taking an element of the crime away from the jury. In both of those cases, the error may have influenced the evidence the defendants put forward or the arguments they made. Nonetheless, the Supreme Court held implicitly in Carella and explicitly in Neder that the error was not structural.
The same is true when constitutional error is committed by precluding lesser included offenses in capital cases. A defendant prevented by state law from having the jury consider a lesser included offense very well might refrain from putting forward evidence that he was guilty of it instead of the greater offense. Be that as it may, the Supreme Court in Hopper v. Evans determined that this type of constitutional error is not structural and affirmed the conviction because the unconstitutional preclusion provision had no prejudicial effect in that case. 456 U.S. 605, 613-14, 102 S.Ct. 2049, 2054, 72 L.Ed.2d 367 (1982) (rejecting the argument that the preclusion provision “so infected respondent’s trial that he must be retried” and reversing the grant of relief because that provision did not prejudice the respondent).
For the reasons just discussed, it would not be enough to make Booker error structural if defendants in pre-Booker sentencing proceedings had no incentive to introduce mitigating evidence or arguments relating to § 3553(a) factors. Judge Tjoflat’s structural theory depends on the assumption that before Booker there was *1271 no such incentive, yet in reality there was. This is yet another problem with his theory. The assumed lack of incentive is his theory’s explanation for why the pre-Booker sentencing record in any given case would not contain evidence indicating the presence of any § 3553(a) factors that might make a difference in the post-Boofcer advisory sentencing regime. Defendants in pre-Booker sentencing proceedings lacked any incentive to offer § 3553(a) evidence or argument, Judge Tjoflat says, because it would have been irrelevant unless it fit within a permissible ground for downward departure, which not all § 3553(a) factors do. Tjoflat, J., dissenting, at 1289.
Chief Judge Boggs of the Sixth Circuit has pointed out the flaw in this argument:
This argument ignores a fundamental feature of the Guidelines: they present a sentencing court with a range, from which it must select a sentence. In this case the range was nearly five years— 57 months. Counsel already had every reason and every opportunity to present any mitigating circumstance that might possibly have saved Barnett from an additional five years in prison. Any arguments that might be raised post-Booker about culpability, future dangerousness, offsetting good works, family obligations, or any other mitigating circumstance were also fair game pre-Booker, and these arguments for mitigation have been regularly invoked by defense counsels in pr e-Booker sentencing proceedings. United States v. Riascos-Suarez, 73 F.3d 616, 627-28 (6th Cir.1996) (finding reversible error when the defendant was not offered the opportunity to give mitigating evidence at sentencing). The Guidelines never placed any limits on the ability of the district court to consider these factors, so there is no reason to remand so the district court may consider additional circumstances.
United States v. Barnett, 398 F.3d 516, 537-38 (6th Cir.2005) (Boggs, C.J., concurring in part and dissenting in part); see also Gonzalez-Huerta, 403 F.3d at 735, 2005 WL 807008, at *6. That’s a good point.
For example, in this case the guidelines range was 97 to 121 months, a spread of two full years. Rodriguez, 398 F.3d at 1296. In our Shelton case, the guidelines range was effectively 190 to 222 months, a spread of more than two-and-a-half years. 400 F.3d at 1328. The guideline ranges in Rodriguez and Shelton exemplify the fact that most pre-Booker sentencing defendants, including the one in this case, had plenty of incentive to put forth mitigating evidence and arguments relating to the § 3553(a) factors. Those factors were not, as Judge Tjoflat suggests, “irrelevant in all but the most unusual cases” in pre-Booker sentencing. Tjoflat, J., dissenting, at 1289. To the contrary, they were relevant in virtually every case. (The Duncan case exemplifies the exception, because there the guidelines dictated a life sentence. 400 F.3d at 1300 n. 2.).
Judge Tjoflat says that “we must assume, if anything, that a defendant such as Rodriguez would have done something different under the new model.” Tjoflat, J., dissenting, at 1291. There is no justification for that assumption, especially with a defendant such as Rodriguez who had two years worth of incentive built into the guidelines range to come forward with any § 3553(a) evidence or arguments at his pre-Booker sentencing proceeding. Even if we were to disregard the guidelines range incentive, the crucial assumption be *1272 hind Judge Tjoflat’s structural theory ignores the fact that, if the guidelines had been only advisory, the probation officer in compiling the PSR and the government in advocating a longer sentence could have put forth evidence and arguments that the § 3553(a) factors favored a sentence above the guideline range. The question is not what the defendant would have done. The question is what the district court would have done after hearing the evidence and arguments of both sides.
There is no basis for any assumption that the differences between an advisory and a mandatory guidelines system will favor defendants in general or, more importantly, a particular defendant. The fact is that in most cases, as in Rodriguez, 398 F.3d at 1301, we just don’t know. But there are cases like Shelton, 400 F.3d at 1332-33, where the record shows a reasonable probability of a different result in favor of the defendant if the guidelines had not been mandatory. That is why we sent that case back for resentencing. Where, however, we have no indication either way, the party with the burden loses. Rodriguez, 398 F.3d at 1301. When it comes to the third prong of the plain error test, that party is the defendant. Id.
II.
Judge Tjoflat is correct about the Fourth and Sixth Circuits’ approach to this issue being wrong. See Tjoflat, J., dissenting, at 1297-98 n.19 (citing United States v. Hughes, 401 F.3d 540 (4th Cir.2005), and United States v. Oliver, 397 F.3d 369 (6th Cir.2005)). As he explains, it is simply inaccurate to say, as those two circuits do, a defendant has carried his burden of showing that a Booker error has affected his substantial rights when we can only guess what the result would be without the error. Id. Instead of saying that there is a burden and then applying it in a way that is not burdensome, it is more forthright to argue directly, as Judge Tjoflat does, that the burden ought not exist. See id. (“In short, these courts require the defendant to show that his substantial rights were affected only to find that they were in every case involving constitutional error, whereas I would simply say that no such showing is required.”). For the reasons already discussed, this Court did not adopt Judge Tjoflat’s approach, but at least his reasoning has the virtue of analytical transparency.
Since our Rodriguez opinion, the Fourth Circuit panel that issued the original Hughes decision has taken another look at it. That second look resulted in the issuance of a new opinion that reaches the same conclusion. See Hughes, 401 F.3d 540. We have already discussed at some length the flaws in the reasoning on display in the first Hughes opinion, Rodriguez, 398 F.3d at 1301-04, but the new opinion illuminates those flaws in ways that warrant additional comment. See also United States v. Coles, 403 F.3d 764, 767, 2005 WL 783069, *4 (D.C.Cir. Apr.8, 2005) (per curiam) (discussing the problems with the Hughes approach and concluding that it “flies in the face of the Supreme Court’s remedial order in Booker”).
There is no longer any reason to doubt that the Fourth Circuit’s erroneous approach has at its core the premise that the mandatory nature of the guidelines is not an essential part of a Booker constitutional violation. This is the paragraph of its new Hughes opinion that lays bare the substructure of its reasoning:
Stated differently, the act of mistakenly treating the guidelines as mandato *1273 ry is not part of the Sixth Amendment error before us, despite the fact that the former mandatory nature of the guidelines set the stage for the constitutional violation in Booker. That the erroneous treatment of the guidelines as mandatory is not part of the constitutional error can be seen most clearly in a post-Booker context. Suppose a district court, post-Booker, erroneously treats the guidelines as mandatory when imposing a sentence that rests in part on extra-verdict enhancements. Such a sentence would certainly be erroneous, but there would be no Sixth Amendment error because, regardless of what the district court thought, the guidelines post-Booker are in fact advisory and the sentence imposed did not exceed the maximum authorized by the jury verdict (which is, of course, the maximum set forth in the statute of conviction).
Hughes, 401 F.3d at 553-54; see also id. at 552-53 (There is “a separate class of error, namely, the error of treating the guidelines as mandatory at sentencing. Such an error is distinct from the Sixth Amendment claim that gave rise to the decision in Booker, and it is non-constitutional in nature.”). Wrong, wrong, wrong.
Treating the guidelines as mandatory is an essential part of the constitutional error, not a non-constitutional error distinct from the one involved in the Booker decision. The Supreme Court was unanimous about that. All nine Justices joined one or both of the majority opinions, each of which stated that the use of extra-verdict enhancements in an advisory regime is permissible and that if the guidelines are not applied mandatorily there is no constitutional error. Booker, 125 S.Ct. at 750 (Stevens, J., maj. op.) (“If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.”); id. at 764 (Breyer, J., maj. op.) (“[W]ithout this provision — namely the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges — the statute falls outside the scope of Apprendi’s requirement.” (internal quotation and markings omitted)). The Hughes opinion manages to reject the one principle that all nine Justices agreed on in Booker. Admittedly, the Justices did not add to their statements “... and we really mean it,” but what else short of that could the Court have said to convey that it was serious?
The hypothetical laid out in the part of the Hughes opinion quoted earlier highlights the Fourth Circuit’s misunderstanding of Booker. If a district court in the post-Booker world applies an extra-verdict enhancement and treats the guidelines as mandatory, of course the resulting sentence will be unconstitutional. The violation and its impact on the defendant will be identical to what occurred in the Booker case itself. That the constitutional violation and its impact occurs not in obedience to a statutory mandate but as a result of ignorance, negligence, or defiance does not make it any less a constitutional violation. Constitutional error can be committed free of statutory command. The effect, if any, on the defendant is the same if the same act is committed in the same circumstances regardless of the source of the error. If the guidelines are applied in a mandatory way when there are extra-verdict enhancements, the result is a pattern-perfect Booker constitutional violation.
The Fourth Circuit’s disregard of what the -Supreme Court said in Booker about *1274 the mandatory application of the guidelines being the source of the constitutional violation led that circuit to give the wrong answer to the question it posed in the latest Hughes opinion. The prejudice inquiry, Hughes says', “is whether the district court could have imposed the sentence it did without exceeding the relevant Sixth Amendment limitation. If the answer to this inquiry is ‘yes’ ... then the defendant has failed to demonstrate an effect on substantial rights Hughes, 401 F.3d at 550-51. The answer, of course, is “yes.” The district court could have applied the same extra-verdict enhancement and imposed the same sentence it did without violating the Sixth Amendment by consulting the guidelines but treating them as advisory. That non-mandatory application of the guidelines would have violated the Sentencing Reform Act as it then existed, specifically 18 U.S.C. § 3553(b)(1), but it would not have violated the Sixth Amendment. That is why the Supreme Court’s Booker decision instructs district courts to find and apply any extra-verdict enhancements in future cases but to treat the resulting guidelines range as advisory.
In addition to resting on a premise that is contrary to the stated belief in the Booker decision of every single Justice, the Fourth Circuit never adequately explains why the decision about whether a particular defendant has been prejudiced should not turn on • the one factor that will be changed on remand in order to avoid the constitutional violation. It never tells us how its rule about the third prong of the plain error test serves the main purpose of the prong’s prejudice requirement, which is to avoid wasteful reversals. See Dominguez Benitez, 124 S.Ct. at 2340 (application of the prejudice standard “should enforce the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpre-served error”). By divorcing the question of whether to reverse from the question of what would change on remand, the Fourth Circuit’s Hughes rule does not avoid wasteful reversals but is instead an engine for generating them.
III.
While cheering on Judge Tjoflat’s efforts to construct a structural error theory, Judge Barkett’s dissenting opinion also suggests that the Court has applied the wrong prejudice standard in these post-Booker plain error cases, or perhaps that we applied the correct standard in the wrong way. To the contrary, we have applied the correct standard correctly.
This is what we said in the panel opinion:
The third prong of the plain error test, however, is another matter. It requires that an error have “affect[ed] substantial rights,” which almost always requires that the error “ ‘must have affected the outcome of the district court proceedings.’ ” Cotton, 535 U.S. at 632, 122 S.Ct. at 1786 (quoting Olano, 507 U.S. at 734, 113 S.Ct. at 1778). The standard for showing that is the familiar reasonable probability of a different result formulation, which means a probability “ ‘sufficient to undermine confidence in the outcome.’ ” United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). In regard to this third prong, “[i]t is the defendant rather than the [government who bears the *1275 burden of persuasion with respect to prejudice.” Olano, 507 U.S. at 734, 113 S.Ct. at 1778.
Rodriguez, 398 F.3d at 1299. We repeated and applied the reasonable probability of a different result standard — not a preponderance standard — at least five more times throughout our opinion. See id. at 1301 (“Therefore, in applying the third prong, we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case.” (emphasis added)); id. (“[Wjhere the effect of an error on the result in the district court is uncertain or indeterminate — where we would have to speculate — the appellant has not met his burden of shoiving a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected.” (emphasis added)); id. at 1302 (“The important function of the third prong of the plain error test is to prevent a remand for additional proceedings where the defendant, who failed to make a timely objection, cannot show that there is a reasonable probability that a do-over would more likely than not produce a different result.” (emphasis added)); id. (“Therefore in order to satisfy the third prong of the plain error test, pre-Booker defendants must establish a reasonable probability that if the district court had considered the guidelines range it arrived at using extra-verdict enhancements as merely advisory, instead of mandatory, ¿nd had taken into account any otherwise unconsidered § 3553 factors, the court would have imposed a lesser sentence than it did.” (emphasis added)); id. at 1304 (“As we have explained, where the record does not provide ‘any indication’ that there would have been a different sentence if the court had recognized and exercised its § 3553(a) discretion and treated the guidelines range as merely advisory, the party with the burden of showing a reasonable probability of a different result loses.” (emphasis added)).
The difference in views between this Court and Judge Barkett is not about the standard to apply. We all agree that the reasonable probability standard applies. The difference is how that standard applies when - we cannot tell whether the error caused prejudice. The Court’s position, which is set out in Rodriguez, Curtis, and Duncan, is that the defendant loses in this situation. That is so because the burden is on the defendant, and the Supreme Court in Jones v. United States, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), told us that when we cannot tell whether the error caused prejudice the defendant loses.
Judge Barkett does not dispute that the defendant has the burden of showing prejudice; she just says that it does not really amount to any burden at all. Her view is that once there is error, the - defendant carries his burden of establishing prejudice by showing that we don’t know if the error prejudiced him. Barkett, J., dissenting, at 1298-99. In other words, nothing equals something; the burden is no burden at all. The adjective “oxymoronie” does not do justice to this “no-burden burden” concept.
Aside from robbing a perfectly good word (“burden”) of its plain meaning, this key premise of Judge Barkett’s position is also contrary to a number of our prior decisions applying the reasonable probability of a different result standard. See Straight v. Wainwright, 772 F.2d 674, 680 (11th Cir.1985) (defendant fails to carry his
*1276 burden of showing a reasonable probability of a different result where “[t]here is absolutely no evidence” on the issue); Henry v. Wainwright, 743 F.2d 761, 763 (11th Cir.1984) (per curiam) (where there is nothing to show that an omitted instruction would have applied to the jury’s deliberations, there is “nothing upon which a finding of prejudice could be based,” and the existence of “only,a possibility of prejudice” is not enough to satisfy the defendant’s burden of showing a reasonable probability of a different result); Adams v. Wainwright, 764 F.2d 1356, 1369 (11th Cir.1985) (where there is no proof on the issue, the defendant has failed to carry his burden of showing a reasonable probability of a different result).
More importantly, Judge Barkett’s position cannot be reconciled with the specific holding and instruction of the Supreme Court’s decision in Jones. As we explained in the panel opinion, Jones is directly applicable to plain error third-prong situations in which it is unclear what effect, if any, the error had. Rodriguez, 398 F.3d at 1301. The Jones decision came in a capital case where the defendant had failed to object in the district court to the omission of a jury instruction about the consequences of a deadlock on the sentence issue. In rejecting the defendant’s plain error argument, the Supreme Court explained that the situation was one in which it could not be determined what effect, if any, omission of that instruction had on the outcome of the capital sentence proceeding. It instructed us that where the effect of an error may as likely have cut one way as the other, where the effect it had on the outcome is indeterminate, the “defendant cannot meet his burden of showing that the error actually affected his substantial rights.” Jones, 527 U.S. at 394-95, 119 S.Ct. at 2105. We are not to speculate in this kind of situation. The defendant loses because the defendant has the burden. Id.; see also Rodriguez, 398 F.3d at 1300 ¿(“Tbe lesson of the Supreme Court’s Jones decision is that the burden truly is on the defendant to show that the error actually did make a difference .... Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant.”).[5]
Judge Barkett apparently does not dispute that the rule stated in Jones would *1277 compel a finding that Rodriguez has failed to satisfy the third-prong of the plain error test. Instead, her position is that we need not and should not follow the Supreme Court’s decision in Jones. She gives several reasons, none of which are persuasive.
Judge Barkett argues that what the Supreme Court said in Jones is “in direct conflict” with what it said later in United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). Barkett, J., dissenting, at 1300-01. There is no conflict, direct or indirect. Even if there were, we would be required to follow the more specific commandment from the Jones case. All that Dominguez Benitez held is that the third-prong prejudice standard requires the defendant to show a reasonable probability of a different result, which means a probability sufficient to undermine confidence in the outcome of the proceeding. 124 S.Ct. at 2338-40. The decision did not hold or say anything about what the result of applying that standard should be where there is no indication whether the error actually did have an adverse effect on the outcome of the proceeding. The Court remanded the Dominguez Benitez case to the court of appeals for application of the standard. Id. at 2342.
By contrast, in Jones this very issue was presented, addressed, and decided. The Supreme Court could not have been more specific in telling us that where the error just as likely could have worked in the defendant’s favor as against him, where the effect is indeterminaté, where we simply cannot tell, the defendant has failed to carry his burden on the third prong of the plain error test. Dominguez Benitez states the general standard, and Jones speaks to a specific situation, the one before us in most of the pre-Booker sentence cases. The two decisions are not in conflict.
Reduced to its essence, Judge Barkett’s theory for disregarding the direct application of Jones is that it was implicitly overruled' by the later decision in Dominguez Benitez, a premise based on her belief that Jones rests on reasons rejected in Dominguez Benitez. The problem with her approach is that the Supreme Court has repeatedly told us not to take it. The Court has instructed us: “If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decision.” Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 1921-22, 104 L.Ed.2d 526 (1989); see also Tenet v. Doe, 544 U.S. —, 125 S.Ct. 1230, 1237, 161 L.Ed.2d 82 (2005) (quoting Shearson/Am. Express, Inc., 490 U.S. at 484, 109 S.Ct. at 1921-22); Am. Trucking Ass’ns, Inc. v. Smith, 496 U.S. 167, 180, 110 S.Ct. 2323, 2332, 110 L.Ed.2d 148 (1990) (plurality op.) (same); Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997) (“We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.”); Hohn v. United States, 524 U.S. 236, 252-53, 118 S.Ct. 1969, 1978, 141 L.Ed.2d 242 (1998) (“Our decisions remain binding precedent until we see fit to reconsider them, regardless *1278 of whether subsequent cases have raised doubts about their continuing vitality.”).
We have been careful to heed the Supreme Court’s admonition about following its decisions until that Court explicitly overrules them. See Fla. League of Prof'l Lobbyists, Inc. v. Meggs, 87 F.3d 457, 462 (11th Cir.1996) (‘We take this admonition to heart, and we decline to take any step which might appear to overrule [prior Supreme Court decisions].”); Eng’g Contractors Ass’n of S. Fla. Inc. v. Metro. Dade County, 122 F.3d 895, 908 (11th Cir.1997) (“Of course, we take that admonition seriously.”); Scala v. City of Winter Park, 116 F.3d 1396, 1399 n. 2 (11th Cir.1997) (heeding the admonition and following an earlier Supreme Court decision even though later decisions of the Court had “cast some doubt” on it); Brisentine v. Stone & Webster Eng’g Corp., 117 F.3d 519, 525 (11th Cir.1997) (“It may be that the Supreme Court has cut [an earlier decision] back so far that it will not survive. Perhaps, but we are not convinced we are authorized to sing the dirge of [that earlier decision]. We will leave that to the Supreme Court, which has admonished courts of appeals [to do so].”). Likewise, the panel has heeded the Supreme Court’s admonition in this case. Failure to do so would not be reasoning, it would be rebellion.
Judge Barkett also argues that our approach violates the Federal Sentencing Act’s direction that the district court should determine in the first instance the sentence that should be imposed. Barkett, J., dissenting, at 1301. Not so. The district court has determined in the first instance the sentence in all pre-Booker sentence cases. The question now is not what the defendant’s sentence should be, but whether the defendant has carried his burden of establishing the prejudice required by the third prong of the plain error test.
Judge Barkett’s argument that Williams v. United States, 503 U.S. 193, 205, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992), requires that we disregard the lack of a prejudice showing is also unpersuasive. The Williams decision involved preserved error. It did not purport to hold that the contemporaneous objection rule was inapplicable to sentencing errors. It did not say that the plain error rule was different for sentencing cases. It did, however, note that the harmless error rule applies to sentence errors, id. at 203, 112 S.Ct. at 1120-21, which is inconsistent with the notion that sentencing errors require remand regardless of ordinary prudential doctrines.[6]
IY.
Neither Judge Tjoflat nor Judge Bark-ett proposes that this Court adopt the Second, Seventh, and D.C. Circuits’ novel *1279 approach to third-prong prejudice determinations. See United States v. Crosby, 397 F.3d 103 (2d Cir.2005); United States v. Williams, 399 F.3d 450 (2d Cir.2005); United States v. Paladino, 401 F.3d 471 (7th Cir.2005); United States v. Coles, 403 F.3d 764, 2005 WL 783069 (D.C.Cir. Apr.8, 2005) (per curiam). Although unwilling to embrace that approach, Judge Tjoflat takes some comfort in the Seventh Circuit’s criticism of our application of conventional plain error analysis. See Tjoflat, J., dissenting, at 1290 (“Or, as the Seventh Circuit put it, I ‘cannot fathom why the Eleventh Circuit wants to condemn some unknown fraction of criminal defendants to serve an illegal sentence.’ ” (quoting Paladino, 401 F.3d at 484)). Only three of the eleven circuits that have taken a position on the proper way to decide whether plain error exists in pre-Booker situations have chosen the Crosby/Paladino model.
What the Second, Seventh, and D.C. Circuits do is remand every pr e-Booker sentence (where the defendant wants a remand) in which it is not clear that the unpreserved Booker error was harmless. Williams, 399 F.3d at 460 (“We remanded only after we determined that, on the record in Crosby, we could not say with sufficient confidence that the same sentence would have been imposed.”); Paladino, 401 F.3d at 484 (describing the court’s intention to remand in those “Booker cases in which it is difficult for us to determine whether the error was prejudicial”); Coles, 403 F.3d at 767, 2005 WL 783069, at *1 (same).
In the Second Circuit, if the district court determines on remand that it would have sentenced the defendant to less time under Booker, it is to pronounce that plain error exists, set aside the prior judgment, and proceed to conduct the real resentence proceeding. See Crosby, 397 F.3d at 117-18, 120; Williams, 399 F.3d at 459-61. But if the defendant fails to get the appellate relief he is seeking in the district court, he apparently is free to appeal to the real appellate court urging it to reverse the district court’s third-prong plain error determination. And if the district court decides that it would have sentenced the defendant differently and does so, the government apparently can appeal that determination as well as any additional errors embedded in the new sentence. Crosby, 397 F.3d at 119.
The Seventh Circuit’s procedure is similar, except that it formally retains jurisdiction of the case during the remand and will be the court that actually vacates the pre-Booker sentence following the district court’s determination that it would have reached a different result under the Booker regime. See Paladino, 401 F.3d at 484. Then the case will go back down for the actual resentencing. Id. While retaining for itself the responsibility to enter the order vacating the initial sentence after remand, it is only a pro forma reservation in the sense that the actual decision making will be vested entirely in the district court. See id. (“Under our procedure, since we retain jurisdiction throughout the limited remand, we shall vacate the sentence upon being notified by the judge that he would not have imposed it had he known that the guidelines were merely advisory.”). The D.C. Circuit’s procedure is identical to the Seventh’s. See Coles, 403 F.3d at 770, 2005 WL 783069, at *7.
The Crosby/Paladino model essentially delegates to the district court the appellate function of determining whether there is prejudice necessary for correction of un-preserved error. There is no basis in any of the relevant Supreme Court decisions *1280 for that delegation, and every indication is that we should make the decision at the appellate level from the record as it exists. The language of those decisions, to the extent they touch on the matter, indicates what one would assume, which is that determining whether plain error exists is an appellate function to be decided from the record on appeal, not something to be decided by the district court after remand. See Dominguez Benitez, 124 S.Ct. at 2340 (“[Under plain error review, a] defendant must ... satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.” (internal quotation omitted)); United States v. Vonn, 535 U.S. 55, 59, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90 (2002) (“[A] silent defendant has the burden to satisfy the plain-error rule and ... a reviewing court may consult the whole record when considering the effect of any error on substantial rights.”); see also Gonzalez-Huerta, 403 F.3d at 731 n. 4, 2005 WL 807008, at *3 n. 4 (concluding that the Crosby/Paladino procedure is “inconsistent with plain error doctrine”).
The emotional punch behind the Seventh Circuit’s criticism of our approach derives from its charge that we are “condemn[ing] some unknown fraction of criminal defendants to serve an illegal sentence.” Paladino, 401 F.3d at 484. That charge defines “illegal sentence” as one in which a decision that would otherwise result in reversal is not applied in a case because of the contemporaneous objection rule. By equating enforcement of the contemporaneous objection rule, and the recognition that the plain error exception is “circumscribed,” Jones, 527 U.S. at 389, 119 S.Ct. at 2102, and should be exercised “sparingly,” id., with countenancing illegality, the charge proves too much. In every criminal case in which it matters that the contemporaneous objection rule was applied, and there have been thousands of cases where it has mattered, some defendant under this view will have been condemned to serve an “illegal sentence” or, worse still, will have been condemned to suffer an “illegal conviction.”
If “illegality” is defined this way and the goal is to prevent “illegal” sentences and convictions, the only way to achieve that goal is to abolish the contemporaneous objection rule. Not just in Booker error cases but in all criminal cases. We also will have to abolish and repeal the procedural bar doctrine which a half century of decisional law and federal statutory development has put into place. After all, by applying that doctrine, as we do in countless cases, we are condemning some unknown fraction of criminals to serve “illegal” sentences or to suffer from “illegal” convictions. And what of the thousands of prisoners condemned to suffer sentences that violate the Sixth Amendment under Booker, because their cases finished the direct review process before that decision was announced instead of afterwards. No circuit, including the Seventh, has yet to suggest that Booker is retroactively applicable to collateral proceedings, and in light of Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), it is highly unlikely that any will. The only way to rescue all of those prisoners from their “illegal sentences” is to throw out the Teague decision and its progeny. See Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The parts of the AEDPA that are found in 28 U.S.C. § 2255 ¶¶ 6 & 8 probably will have to go as well. Only when all of these decisional and statutory doctrines and the important values they serve are thrown on the trash *1281 heap will we be able to reduce the numerator of that unknown fraction of defendants suffering from “illegal” convictions or serving “illegal” sentences to zero.
Our legal system does not simply require that the government comply with the Constitution. It also makes parties, defendants as well as the government, comply with procedural rules, such as the contemporaneous objection rule, on pain of forfeiting legal rights they could otherwise enforce. Requiring rights to be asserted in a timely and appropriate fashion furthers interests that are vital to the proper functioning of our judicial system. See Wainwright v. Sykes, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977); United States v. Pielago, 135 F.3d 703, 709 (11th Cir.1998); Esslinger v. Davis, 44 F.3d 1515, 1525 & n. 36 (11th Cir.1995); United States v. Sorondo, 845 F.2d 945, 948-49 (11th Cir.1988). The narrowness of the plain error exception to the contemporaneous objection rule reflects the importance of those interests. Broadening that exception, or constructing ways to circumvent its restrictions on an issue-by-issue basis, lessens the effect of the rule and undermines the interests it serves.
If the matter is to be addressed in “illegality” terms, then put it this way: Failure of a defendant to comply with clear procedural rules during the judicial process is itself a type of illegality that may block consideration of his claim that he has suffered an illegality.

. In United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court held that in order to satisfy the plain error test, the defendant must demonstrate (1) error, (2) that is plain, and (3) that affects substantial rights. Id. at 732-37, 113 S.Ct. at 1777-79. "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.’" Johnson v. United States, 520 U.S. 461, 467, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997) (internal marks omitted) (quoting Olano, 507 U.S. at 732, 113 S.Ct. at 1776).

. The eleven circuits in this count include the Ninth, although its Booker plain error decision has been vacated for rehearing en banc. See United States v. Ameline, 400 F.3d 646, 654-55 (9th Cir.), reh’g en banc granted, 401 F.3d 1007 (9th Cir.2005).

. A panel of the Sixth Circuit skipped the third prong and held that the fourth prong of the plain error test was not met in one case. United States v. Bruce, 396 F.3d 697, 719-20 (6th Cir.2005). However, the Sixth Circuit has since decided that the Bruce decision is not to be followed because it conflicts with the earlier decision of another Sixth Circuit *1266 panel in the Oliver case. See United States v. Milan, 398 F.3d 445, 452 n. 3 (6th Cir.2005) ("To the extent Bmce conflicts with Oliver, we note that we must follow Oliver because it was decided first.”). The Tenth Circuit’s en banc majority opinion, like that of the Sixth Circuit's Bruce panel, also skipped the third prong and went straight to the fourth in its recent plain error decision. See Gonzalez-Huerta, 403 F.3d at 735-39, 2005 WL 807008, at *6-9.

. The language that Judge Tjoflat quotes from a footnote in our decision in United States v. Sanchez, 269 F.3d 1250, 1272 n. 41 (11th Cir.2001) (en banc), is pure dictum. See Tjoflat, J., dissenting, at 1284-85. The error in that case was constitutional, not statutory.
Judge Tjoflat expresses some surprise at the refusal of the panel opinion and its author to be impressed by that dictum from the Sanchez opinion. Tjoflat, J., dissenting, at 1296 n. 18. He shouldn’t be surprised, because it is well-established that dicta does not bind anyone. E.g., McDonald's Corp. v. Robertson, 147 F.3d 1301, 1315 (11th Cir.1998) (Carnes, J., concurring) ("For these reasons, among others, dicta in our opinions is not binding on anyone for any purpose.”), quoted with approval, Shinn ex rel. Shinn v. Comm’r of Soc. Sec., 391 F.3d 1276, 1285 (11th Cir.2004) (Tjoflat, J.).
The only thing that is truly surprising is Judge Tjoflat’s new-found respect for dictá, and his reliance on the dictum in the Sanchez opinion, Tjoflat, J., dissenting, at 1284-85, which comes after years of proclaiming himself not to be bound by dicta in this Court’s, or even the Supreme Court's, opinions. See, e.g., United States v. Smith, 402 F.3d 1303, 1315 n. 7, 2005 WL 628686, *6 n. 7 (11th Cir.2005) (Tjoflat, J.) (”[T]he prior panel rule does not extend to dicta.”' (internal citation and quotation omitted)); United States v. Santa, 236 F.3d 662, 672 n. 14 (11th Cir.2000) (Tjoflat, J.) ("It is well settled, however, that no opinion can be considered as binding authority unless the case calls for its expression. As the court’s statement in [United States v.] Nixon [918 F.2d 895 (11th Cir.1990)1 was unnecessary to its decision, it is a dictum and does not control our decision in this case.” (internal citation and quotation- omitted)); Klay v. United Healthgroup, Inc. 376 F.3d 1092, 1101 n. 12 (11th Cir.2004) (Tjoflat, J.) (stating that ”[t]his holding, moreover, was pure dicta, as we had previously concluded that we lacked jurisdiction in the matter,” and concluding that "we are not bound to adhere to it”); Mobley v. Head, 306 F.3d 1096, 1102 (11th Cir.2002) (Tjoflat, J„ dissenting) (stating that because a decision on an issue by a prior panel was mere dicta, that issue remains open for later review); Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1396 (11th Cir.1998) (Tjoflat, J.) (stating that he is "mindful of dicta” in a Supreme Court decision "that appeared to be in tension with the conclusions I reach today,” but concluding that he is not bound by Supreme Court, dicta).

. The Court in Jones was faced with the question of whether the defendant, who failed to properly preserve his objection, was entitled to a new sentence proceeding because of the district court’s failure to give a jury instruction. 527 U.S. at 387-88, 119 S.Ct. at 2101-02. The Court held that the error the defendant claimed was not plain error for two alternative reasons. It was not plain error because the jury instructions were not error, id. at 389-90, 119 S.Ct. at 2102, and also because the defendant had failed to carry his burden of satisfying the third prong of the plain error test by showing that the failure to give the additional instructions had prejudiced him, id. at 394-95, 119 S.Ct. at 2105.
The Supreme Court’s decision in Jones that the defendant had failed to make the required showing of prejudice for plain error purposes provided as much support for the result in that case, which was affirmance of the sentence, as did its decision that there was no error. Either holding would have been adequate. Each is an alternative holding, and each alternative holding is binding. See Massachusetts v. United States, 333 U.S. 611, 623, 68 S.Ct. 747, 754, 92 L.Ed. 968 (1948); Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 340, 48 S.Ct. 194, 196, 72 L.Ed. 303 (1928) ("It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion.”); United States v. Title Ins. & Trust Co., 265 U.S. 472, 486, 44 S.Ct. 621, 623, 68 L.Ed. 1110 (1924); Union Pac. Ry. Co. v. Mason City & Fort Dodge Ry. Co., 199 U.S. 160, 166, 26 S.Ct. 19, 20, 50 L.Ed. 134 (1905); Johnson v. DeSoto County Bd. Comm'rs, 72 F.3d 1556, 1562 (11th Cir.1996) *1277 ("we are bound by alternative holdings”); McLellan v. Mississippi Power & Light Co., 545 F.2d 919, 925 n. 21 (5th Cir.1977) (en banc) ("It has long been settled that all alternative rationales for a given result have prece-dential value.”).

. Judge Barkett argues in a footnote that this Court’s Booker plain error position is somehow inconsistent with a footnote in United States v. Fuente-Kolbenschlag, 878 F.2d 1377, 1379 n. 7 (11th Cir.1989) (per curiam). Barkett, J., dissenting, at 1303 n.9. It is not. The defendant in that case had raised the alleged error by timely, specific objection during sentencing. The opinion in the case could not have decided, and did not purport to say anything about, what happens when there is a failure to object. At most Fuente-Kolbenschlag stands for the unremarkable proposition that in a case of preserved error the fact that overlapping ranges might have resulted in the same sentence being imposed anyway did not insulate the error from review on appeal. See Fuente-Kolbenschlag, 878 F.2d at 1379 n. 7. That is another way of saying that if we don’t know what would have happened but for the error, the party with the burden on the prejudice issue loses. (In Fuente-Kolben-schlag that party was the government, but it won anyway because there was no error. Id. at 1378-79.)